1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                                San Francisco Division

11    M.D.B.,                                  Case No. 19-cv-02435-LB

12                    Plaintiff,
                                               **ORDER GRANTING PLAINTIFF'S**
13           v.                                **MOTION FOR SUMMARY**
                                               **JUDGMENT**
14    NANCY A. BERRYHILL,
                                               Re: ECF No. 16, 24, 30, 31
15                    Defendant.

16

17                                  **INTRODUCTION**

18          The plaintiff, M.D.B., seeks judicial review of a final decision by the Commissioner of the

19    Social Security administration denying her claim for supplemental security income ("SSI")

20    benefits under Title XVI of the Social Security Act ("SSA").[1] This is her third petition to this

21    court and follows two previous remands to the agency. The plaintiff moved for summary

22    judgment.[2] The Commissioner opposed the motion and filed a cross-motion for summary

23    judgment.[3] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without

24

25    _____

26    [1] Compl. – ECF No. 1; Pl. Mot. – ECF No. 24-1. Citations refer to material in the Electronic Case File
      ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

27    [2] Pl. Mot. – ECF No. 24-1.

28    [3] Cross-Mot. – ECF No. 30.

ORDER – No. 19-cv-02435-LB

oral argument. All parties consented to magistrate-judge jurisdiction.[4] The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross motion, and remands for the calculation and award of benefits.

**STATEMENT**

**1. Procedural History**

The plaintiff filed for SSI benefits under Title XVI on February 13, 2012, alleging fibromyalgia, post-traumatic stress disorder ("PTSD"), depression, and anxiety.[5] Her application was denied initially and on reconsideration.[6] Following an administrative hearing, the administrative law judge ("ALJ") issued an unfavorable decision on September 25, 2013.[7] The Appeals Council denied her request for review on December 9, 2014.[8] The plaintiff timely appealed to the district court.[9] On December 14, 2015, Magistrate Judge Jacqueline Scott Corley granted in part the plaintiff's motion for summary judgment and remanded the case for further proceedings.[10]

On remand, the plaintiff had another administrative hearing before a different ALJ on August 9, 2016.[11] On October 14, 2016, the ALJ issued an unfavorable decision.[12] The plaintiff appealed

---

[4] Consents – ECF Nos. 10, 18.

[5] AR 44.

[6] AR 54, 71.

[7] AR 9.

[8] AR 1.

[9] AR 500–03.

[10] AR 504; *Cox v. Colvin*, No. 15-cv-00190-JSC, 2015 WL 8596436, at *1 (N.D. Cal. Dec. 14, 2015).

[11] AR 446–78.

[12] AR 415.

United States District Court
Northern District of California

to the district court.[13] On March 29, 2018, District Judge William Alsup granted in part the plaintiff's motion for summary judgment and remanded the case again for further proceedings.[14]

After the second remand, the ALJ held a hearing on November 13, 2018, and heard testimony from the plaintiff and vocational expert ("VE") Ronald Fleck.[15] The ALJ issued another unfavorable decision on January 16, 2019.[16] The ALJ's decision became final on April 17, 2019.[17] The plaintiff timely filed this action for judicial review and filed a motion for summary judgment.[18] The Commissioner filed a cross-motion for summary judgment.[19]

## 2.  Summary of Administrative Records

### 2.1  Medical Records

The plaintiff's appeal involves her challenge to the ALJ's assessments of the medical opinions from the following sources: (1) treating physician Robert Gardner, M.D.; (2) treating physician's assistant ("P.A.") Joseph Geare; (3) treating counselor Deborah Johnson, LCSW; (4) examining psychiatrist Daniel Mandelbaum, M.D.; (5) examining psychologist Philip Cushman, Ph.D.; (6) examining psychologist Melody Samuelson, Psy.D.; (7) examining psychologist Molly Malone, Psy.D.; and (8) examining physician Soheila Benrazavi, M.D.[20] The record in the case exceeds 2000 pages.[21] Judge Corley summarized the record to 2013, including the opinions of

---

[13] AR 1493–96.

[14] AR 1497–1504; *Cox v. Berryhill*, No. C 16-07183-WHA, 2018 WL 1536668, at *1 (N.D. Cal. Mar. 29, 2018).

[15] AR 1392–1413.

[16] AR 1352.

[17] AR 1353 ("If you do not file written exceptions [to the Appeals Council] . . . my decision will become final on the 61st day following the date of this notice").

[18] Compl. – ECF No. 1; Pl. Mot. – ECF No. 24-1.

[19] Cross-Mot. – ECF No. 30.

[20] Pl. Mot. – ECF No. 24-1 at 26–34.

[21] AR 1–2020.

United States District Court
Northern District of California

Drs. Gardner, Mandelbaum, and Cushman.[22] The court incorporates that summary by this

reference and recounts only the evidence that post-dates the record available to Judge Corley.[23]

### 2.1.1    Lucerne Community Clinic

#### 2.1.1.1    Joseph Geare, P.A. — Treating

The plaintiff regularly saw Joseph Geare, P.A., from 2012 to 2018, often on a bimonthly or

monthly basis.[24] Throughout these visits, P.A. Geare reported diagnoses including the following:

fibromyalgia, PTSD, anxiety, bipolar affect, panic disorder, depressive disorder, insomnia,

lumbar-disc degeneration, and other pain-related disorders.[25]

P.A. Geare noted that on some visits the plaintiff did not appear to be in "acute distress."[26] On

other visits, he reported the plaintiff's anxiety, agitation, pain, and tearfulness.[27] For example, on

October 20, 2014, P.A. Geare noted the plaintiff's fibromyalgia, insomnia, anxiety, and

hypertension and said that she was "in distress secondary to pain and anxious."[28] His diagnosis

reflected her fibromyalgia, anxiety state, benign hypertension, and PTSD.[29] He prescribed Lyrica

and Norco.[30] On October 27, 2015, P.A. Geare noted that the plaintiff was in acute distress,

---

[22] AR 505–511.

[23] The record also contains duplicate copies of the medical evidence. *See, e.g.* AR 1287–89 (May 3, 2016 visit notes by Joseph Geare, P.A.); AR 1684–86 (same); AR 1837–39 (same). This order cites only the first copy of any duplicate record.

[24] AR 506–508 (describing "regular" visits with P.A. Geare throughout 2012); AR 803–1017 (visits from September 2013 to January 2015); AR 1053–67 (February 2015 to May 2015); AR 1172–80 (June 2015 to July 2015); AR 1204–34 (August 2015 to February 2016); AR 1276–1301 (March 2016 to July 2016); AR 1699–1737 (August 2016 to June 2017); AR 1888–96 (June 2017 to August 2017); AR 1753–55 (September 2017); AR 1901–09 (September 2017 to November 2017); AR 1767–69 (November 2017); AR 1913–62 (December 2017 to September 2018); AR 2009–16 (October 2018).

[25] *See, e.g.,* AR 806, 809, 812, 824, 833, 988, 992–93, 1054, 1176, 1229, 1300, 1721, 1914, 1936, 1951, 1958, 2014.

[26] *See, e.g.*, AR 1667, 1670, 1677, 1681, 1685, 1688, 1694, 1744, 1747, 1754, 1757, 1765, 1817, 1831, 1834, 1856, 1873, 1877, 1948, 2010, 2014.

[27] *See, e.g.,* AR 805, 814, 824, 833, 842, 845, 981, 1000, 1007, 1011, 1062, 1065, 1212, 1293, 1700, 1707, 1715, 1896, 1908, 1958, 1960.

[28] AR 980–81.

[29] *Id*.

[30] AR 982.

anxious and tearful, and in shock due to her husband's suicide by hanging.[31] On August 25, 2017, the plaintiff said that she "has started to hear voices" and was "[v]ery upset."[32] P.A. Geare observed evidence of distress and described the plaintiff as "agitated and anxious."[33] He diagnosed her with anxiety disorder, chronic PTSD, and fibromyalgia.[34] He prescribed Lexapro, Norco, Restoril, and Valium.[35] On October 4, 2018, he described the plaintiff as "depressed and manic."[36] She reported that she had been up all night cleaning.[37] She cried through the appointment and "talk[ed] about suicide."[38] As to her general appearance, P.A. Geare recorded "no acute distress."[39] He reported the following diagnoses: fibromyalgia, low-back pain, PTSD, panic disorder, and chronic-pain syndrome.[40] He prescribed Lyrica, Norco, and Valium.[41]

P.A. Geare completed two medical-source statements for the plaintiff.

The August 4, 2016 statement reflected that the plaintiff (1) "suffers from severe and chronic fatigue, myalgias, anxiety and depression, even though clinic notes . . . are not always indicative of these conditions" and (2) suffers from intermittent severe pain on a daily basis.[42] The plaintiff could walk one city block without rest, sit for 10 minutes at a time, and stand for 15 minutes at a time.[43] The plaintiff could sit, stand, and walk for fewer than two hours in an eight-hour working

---

[31] AR 1211.

[32] AR 1896.

[33] Id.

[34] Id.

[35] Id.

[36] AR 2009.

[37] Id.

[38] Id.

[39] AR 2010.

[40] Id.

[41] Id.

[42] AR 1329, 1332.

[43] Id.

United States District Court
Northern District of California

day.[44] The plaintiff would not be able to lift 10 pounds in a competitive work situation.[45] She would rarely be able to twist, stoop, and crouch and would never be able to climb ladders and stairs.[46] She had limits to her head's range of motion.[47] The plaintiff would likely be off task 25% or more of the time.[48] The plaintiff was "incapable of even 'low stress' work," and would likely miss work more than four days per month.[49]

The October 11, 2018 statement listed the following diagnoses—fibromyalgia, low-back pain, chronic-pain syndrome, PTSD, panic disorder, and depression — and noted that the plaintiff's anxiety, depression, and other psychological factors affected her physical conditions.[50] This statement is similar to the August 2016 statement except that it said that the plaintiff could sit for 20 minutes and stand for 15 minutes at a time.[51] P.A. Geare also noted that the plaintiff could occasionally lift and carry 10 pounds in a competitive work situation and occasionally climb stairs.[52] She would be off task 25% or more of the time, was incapable of low-stress work, and would miss work more than four days a month.[53]

### 2.1.1.2    Deborah Johnson, LCSW — Treating

Between 2014 and 2016, the plaintiff saw licensed clinical social-worker Deborah Johnson for psychotherapy twice a month for treatment for her bipolar disorder.[54] Ms. Johnson documented the plaintiff's mood swings and advised the plaintiff to monitor her moods and take her prescribed

---

[44] AR 1329–30.

[45] AR 1330

[46] *Id.*

[47] *Id.*

[48] AR 1331.

[49] *Id.*

[50] AR 2017–18.

[51] *Id.*

[52] AR 2019.

[53] AR 2020.

[54] AR 1237–1275.

medicine because her moods and anxiety tended to be more stable when she took them.[55] The

plaintiff struggled after her husband's suicide and on October 28, 2015 reported guilt and shock.[56]

A week later, the plaintiff was experiencing a hypomanic episode from her bipolar disorder.[57]

Ms. Johnson documented the plaintiff's depression and struggles with eating and sleeping

enough.[58]

Ms. Johnson completed two medical-source statements for the plaintiff.

The July 28, 2016 statement described the plaintiff's diagnoses of bipolar disorder and PTSD,

and the associated symptoms.[59] For the plaintiff's mental abilities necessary for unskilled work,

Ms. Johnson marked the following areas as "seriously limited": (1) ability to complete a normal

workday and workweek without interruption from psychologically based symptoms; (2) ability to

perform at a consistent pace without unreasonable rest periods; (3) ability to accept instructions

and respond to criticism from supervisors; (4) ability to respond to changes in a routine work

environment; and (5) ability to deal with normal work stress.[60] For her ability to engage in

semiskilled or skilled work, the plaintiff's abilities to understand, remember, and carry out

detailed instructions were seriously limited.[61] The plaintiff's abilities to travel to an unfamiliar

place and to use public transportation were seriously limited.[62] Ms. Johnson marked "unlimited"

or "limited by satisfactory" for other mental abilities.[63]

---

[55] *See, e.g.*, AR 1238, 1243, 1245, 1252.

[56] AR 1259–1264.

[57] AR 1260.

[58] AR 1260–1263.

[59] AR 771–76.

[60] AR 773.

[61] AR 774.

[62] *Id.*

[63] AR 773–71.

United States District Court
Northern District of California

1    Based on the plaintiff's impairments, Ms. Johnson said that the plaintiff would miss work

2    more than four days per month.[64] She also said that the plaintiff's anxiety would exacerbate her

3    pain and other physical symptoms.[65]

4    The October 4, 2018 statement found marked limitations in the following areas: (1) ability to

5    understand, remember, and apply information; (2) ability to interact with others; (3) ability to

6    concentrate, persist, or maintain pace; and (4) ability to adapt or manage oneself.[66] The plaintiff

7    would miss work more than four days a month and would have difficulty working at a regular job

8    on a sustained basis because she "can't 'gauge' her day due to frequent mood swings."[67]

9    ### 2.1.2    Avatar Medical

10   ### 2.1.2.1    Melody Samuelson, Psy.D. — Examining

11   On April 12, 2015, Melody Samuelson, Psy.D., conducted a psychiatric examination of the

12   plaintiff.[68] She noted that her findings were "based on information gathered during this one time-

13   limited mental-status evaluation."[69]

14   The plaintiff's chief complaints during this session were pain, panic attacks, depression, and

15   generalized anxiety disorder.[70] She described having daily panic attacks and experiencing chronic

16   depression and PTSD.[71] She denied psychiatric hospitalization in the past but had psychiatric and

17   psychological treatment, and she was taking Lexapro, Valium, Lyrica, and Vicodin.[72] Dr.

18   Samuelson noted the plaintiff's history of physical, sexual, and emotional abuse throughout her

19   childhood and her history of fibromyalgia.[73]

20   _____

21   [64] AR 775.

22   [65] AR 774.

     [66] AR 2002.

23   [67] AR 2004.

24   [68] AR 1021–27.

25   [69] AR 1021.

     [70] AR 1022.

26   [71] *Id.*

27   [72] AR 1022–23.

     [73] *Id.*

28

United States District Court
Northern District of California

The plaintiff was "average groomed," "coherent[,] and organized."[74] Her thought content was "relevant and non-delusional."[75] Her mood was "moderately depressed[,] and her affect [was] flat and congruent with thought content."[76] The plaintiff denied suicidal ideation.[77] Dr. Samuelson described the plaintiff as "alert and oriented."[78] The plaintiff was able to "recall four items immediately upon presentation" and to recall them after some delay.[79] For "fund of knowledge," the plaintiff "was able to recall the current President of the United States" and describe who Martin Luther King, Jr. was.[80] Dr. Samuelson reported that the plaintiff could count numbers and months backwards slowly but "was not able to attend without repeating instructions."[81] She did not observe any difficulty in the plaintiff's calculation ability.[82] Her insight and judgment were "intact."[83]

Dr. Samuelson reported the following diagnostic impressions: (1) major depressive disorder; (2) panic disorder without agoraphobia; (3) pain disorder due to a general medical condition; (4) chronic PTSD; and (5) generalized anxiety disorder.[84] The plaintiff would benefit from "continued psychiatric treatment and counseling" and "a medical evaluation" to assess her fibromyalgia.[85]

Dr. Samuelson concluded that the plaintiff "should have no difficulty performing simple and repetitive tasks."[86] She found that the plaintiff would have mild difficulty in the following areas:

---

[74] AR 1024.

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] AR 1025.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *See id.*

[83] *Id.*

[84] AR 1025–26.

[85] AR 1026.

[86] *Id.*

United States District Court
Northern District of California

(1) performing complex and detailed tasks; (2) working with the public, supervisors, and co-workers; and (3) maintaining attention, concentration, persistence, and pace.[87] She reported mild impairments in the following areas: (1) ability to "associate with day-to-day work activity, including attendance and safety, depending on her level of depression and anxiety on a given day;" (2) ability to accept instructions from supervisors and maintain regular attendance; and (3) ability to "perform work activities without special or additional supervision."[88] Overall, the plaintiff appeared genuine and did not feign symptoms.[89]

### 2.1.2.2    Molly Malone, Psy.D. — Examining

On January 18, 2018, Molly Malone, Psy.D., performed a comprehensive mental-status evaluation of the plaintiff.[90]

The plaintiff's chief complaints were depression, anxiety with panic attacks, and PTSD.[91] She reported a history of suicide attempts but denied any prior psychiatric hospitalization and denied "current suicidal and homicidal ideation."[92] As for her current level of functioning, the plaintiff said that she did not need help with preparing meals.[93]

Dr. Malone reported that the plaintiff's attention was "limited" and her concentration and memory were "poor."[94] For example, she noted that the plaintiff "made 0 errors spelling 'world' forward[,] [] was unable to spell it in reverse . . . [and] was not able to complete serial 3's adequately."[95] Her calculation was "poor," and "[w]hen asked how much change she would expect back from a five dollar bill if an item cost $1.50, claimant reported, 'I don't know.'"[96] The

United States District Court
Northern District of California

---

[87] *Id.*

[88] *Id.*

[89] AR 1027.

[90] AR 1795.

[91] *Id.*

[92] AR 1796.

[93] *Id.*

[94] AR 1797.

[95] *Id.*

[96] *Id.*

plaintiff's mood was "anxious" and her affect was "labile."[97] Dr. Malone diagnosed the plaintiff with borderline personality disorder, PTSD, persistent depressive disorder, and unspecified anxiety disorder, with panic attacks.[98]

Dr. Malone documented that the plaintiff's "limitations in work and social functioning are significant."[99] She found that the plaintiff's "ability to perform simple and repetitive tasks is mildly impaired."[100] The plaintiff's ability to do work without special or additional supervision was "moderately impaired."[101] Dr. Malone concluded that the plaintiff's ability to perform complex tasks, maintain regular work attendance, accept instructions from supervisors, and interact with coworkers and the public was moderately to significantly impaired.[102] She also found the following significant impairments: (1) ability to work on a consistent basis; (2) ability to complete a normal workday without interruptions; and (3) ability to handle "usual stresses encountered in competitive work environment."[103]

### 2.1.2.3    Soheila Benrazavi, M.D. — Examining

Soheila Benrazavi, M.D., conducted an internal-medicine evaluation of the plaintiff on January 19, 2018.[104] The plaintiff complained of her fibromyalgia and back pain.[105] Dr. Benrazavi reviewed the following medical records: (1) a lumbar CT scan dated May 5, 2017; (2) a C-spine CT scan (no dates noted); and (3) a record dated October 19, 2017 "regarding presentation with back pain; diagnosis of fibromyalgia and anxiety."[106]

---

[97] *Id.*

[98] AR 1798.

[99] AR 1799.

[100] AR 1798.

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] AR 1802–1806.

[105] AR 1802.

[106] AR 1805.

United States District Court
Northern District of California

Dr. Benrazavi observed the plaintiff to be "somewhat anxious" and with "no acute distress at the time of the examination."[107] She reported "grossly normal bilaterally" for the plaintiff's range of motion in her shoulders, elbows, wrists, hips, and ankles.[108] Plaintiff's lumbar spine was negative for spasms or deformity.[109] Dr. Benrazavi reported "no tenderness" and a range of motion for the lumbar spine of "mildly decreased."[110] The plaintiff's knees showed normal limits in motion and no instability.[111]

Dr. Benrazavi said that the plaintiff would be able to "lift and carry 20 pounds occasionally and 10 pounds frequently," could sit, stand, and walk six hours in an eight-hour workday, and could occasionally stoop and climb.[112]

## 2.2   Non-Medical Evidence

The record has statements from the following third parties: (1) the plaintiff's sister; (2) the plaintiff's former husband; (3) the plaintiff's fiancé; and (4) the plaintiff's mother.

### 2.2.1   Sister's Statement

The plaintiff's sister completed a function report on April 15, 2012.[113] She said that the plaintiff, as a single mom, always needed someone to help her manage daily life.[114] The plaintiff did not have problems with personal care but needed reminders from others to take medication and to eat or sleep regularly.[115] The plaintiff prepared her own food and was able to do household chores such as cleaning, laundry, and getting groceries.[116]

---

[107] AR 1803.

[108] AR 1804.

[109] AR 1805.

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] AR 181–88.

[114] *See* AR 181–82.

[115] AR 183.

[116] AR 183–84.

The plaintiff did not go out when she was depressed and was anxious when she was out by herself.[117] The plaintiff was able to pay her own bills, manage a checkbook and a savings account, and count change.[118] The plaintiff did not spend time with others due to "extreme anxiety when around groups of people."[119] Her anxiety isolated her from family and friends, and she "cut off social circles."[120]

The plaintiff's conditions affected her ability to lift, walk, squat, sit, and bend, her memory and concentration, and her ability to get along with others.[121] The plaintiff struggled in social situations and did "not handle stress well at all."[122] Changes in her routine upset her.[123] The plaintiff "functions well when taking her medication and meeting with [her] therapist."[124] The plaintiff did not handle crisis well, and "not a day passes where [the plaintiff] does not have to make an adaptation to her life due to her anxiety."[125] The plaintiff "struggles with sleeping and eating due to anxiety."[126]

### 2.2.2   Husband's Statement

The plaintiff's husband said that the plaintiff was only able to do a few physical activities, such as doing the dishes and bathing her children.[127] The husband took care of other activities, such as driving the children to school, laundry, cleaning, shopping, and other manual labor.[128] He described having to learn the plaintiff's "triggers" and said that they took it "day to day" based on

---

[117] AR 184.

[118] *Id.*

[119] AR 185.

[120] AR 186.

[121] *Id.*

[122] AR 187.

[123] *Id.*

[124] AR 188.

[125] *Id.*

[126] *Id.*

[127] AR 214. The statement is undated.

[128] *Id.*

United States District Court
Northern District of California

how the plaintiff was feeling.[129] He noted that the plaintiff's sensitivity to touch on various parts of her body.[130]

### 2.2.3    Fiancé's Statement

The plaintiff's fiancé submitted a functions report on February 8, 2015.[131] The plaintiff was "always [] in pain" and experienced daily nightmares.[132] She was able to care for her children and herself (but required verbal reminders to take medicine).[133] The plaintiff did not go out and could not do physical activities.[134] She was able to do housework, such as laundry and dishes with help from others.[135] The plaintiff was able to go outside by herself, shop in stores, and manage her money.[136] She struggled to physically keep up with her children.[137] The plaintiff did not spend time with others and shut down around others.[138]

The plaintiff's impairments affected her ability to lift, walk, climb stairs, squat, sit, bend, kneel, stand, and reach, her memory, and concentration, and her ability to get along with others and complete tasks.[139] The plaintiff struggled to handle changes in her routine and required her fiancé's help physically and mentally every day.[140]

---

[129] *Id.*

[130] *Id.*

[131] AR 721–29.

[132] AR 721.

[133] AR 722–23.

[134] *Id.*

[135] AR 723.

[136] AR 724.

[137] AR 725.

[138] AR 725–26.

[139] AR 726.

[140] AR 727–28.

### 2.2.4   Mother's Statement

On July 23, 2016, the plaintiff's mother submitted a statement attesting that she helps the plaintiff with her everyday life by taking her to her doctor's appointments and helping with chores such as cleaning, cooking, and childcare "on a regular basis."[141]

## 3.   Administrative Proceedings

### 3.1   Disability-Determination Explanation (DDE)

The most recent DDE was in February 2018.[142] Non-examining doctors reviewed the record and determined that the plaintiff was not disabled.[143]

The non-examining doctors found that the plaintiff had the following severe impairments: (1) back-discogenic and degenerative disorders and (2) anxiety and obsessive-compulsive disorder.[144] They determined that the impairments were not severe enough to prevent her from working.[145] Laurence Ligon, M.D., analyzed the plaintiff's physical residual-functional capacity ("RFC").[146] He opined that the plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, and stand, walk, and sit for a total of six hours out of an eight-hour workday.[147] She had postural limitations and could occasionally climb ramps, stairs, ladders, ropes, and scaffolds.[148] She could occasionally stoop, kneel, crouch, and crawl, and could frequently balance.[149] She did not have manipulative, visual, communicative, or environmental limitations.[150]

---

[141] AR 750.

[142] AR 1476–1492.

[143] AR 1491.

[144] AR 1483.

[145] AR 1491.

[146] AR 1486–87.

[147] AR 1486.

[148] *Id.*

[149] AR 1486–87.

[150] AR 1487.

United States District Court
Northern District of California

Matthew Comrie, Psy.D., assessed the plaintiff's mental RFC.[151] He found that the plaintiff's ability to understand and remember detailed instructions was moderately limited.[152] She had various moderate limitations in her concentration and persistence, including her ability to (1) carry out detailed instructions, (2) maintain attention and concentration for extended periods, (3) work in coordination with others without being distracted by them, and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms.[153] Her ability to interact appropriately with the general public was moderately limited.[154] She had moderate limitation in her ability to respond to changes in the work setting.[155]

Because her conditions were not severe enough, both non-examining doctors concluded that the plaintiff could adjust to other work and was therefore not disabled.[156]

## 3.2   Administrative Hearings

There have been three administrative hearings in this case: on August 14, 2013,[157] August 9, 2016,[158] and November 13, 2018.[159] Judge Corley summarized the initial hearing (and the court incorporates that summary by this reference).[160] The next sections summarize the second and third hearings.

### 3.2.1   August 9, 2016 Hearing

The ALJ heard testimony from the plaintiff and VE Antonio Reyes.[161]

---

[151] AR 1489.

[152] AR 1487.

[153] AR 1487–88.

[154] AR 1488.

[155] AR 1489.

[156] AR 1491.

[157] AR 28.

[158] AR 1414.

[159] AR 1390.

[160] AR 512–13.

[161] AR 1415–16.

United States District Court
Northern District of California

### 3.2.1.1     The Plaintiff's Testimony

The ALJ questioned the plaintiff. The plaintiff said that she received some benefits, such as food stamps, to help support herself and her children.[162] Her sister helped her with grocery shopping because she did not handle stress or being around people well.[163] She described attending therapy and taking medication for her sleep problems, mental conditions, and fibromyalgia.[164] She described her history of methamphetamine use from age 11 until age 18.[165] She relapsed in 2010 but had been sober since then.[166]

The plaintiff managed a checking account and paid her bills.[167] The ALJ expressed skepticism about whether the plaintiff's mother helped care for the plaintiff's children because the record contained complaints about the mother's "being high all the time."[168] The plaintiff said that she did not have other options and did not leave her children alone with her mother.[169]

The plaintiff's representative also questioned the plaintiff. The plaintiff testified that she started experiencing chronic pain as a child.[170] She receives treatment at the Lucerne Clinic for her psychological and physical conditions.[171] The father of her children, her sister, and her mother all help her to take care of her children.[172] Her pain made it difficult to pick up her children or sit or stand for too long.[173] To get through the day, the plaintiff had to write everything down because

---

[162] AR 1422.

[163] AR 1426.

[164] AR 1426–27.

[165] AR 1428.

[166] AR 1429.

[167] AR 1437.

[168] AR 1438.

[169] *Id.*

[170] AR 1430.

[171] *Id.*

[172] AR 1431-32.

[173] AR 1432–33.

otherwise she forgot to do things.[174] She has struggled with self-harm behavior, such as cutting, all of her life.[175]

### 3.2.2    November 13, 2018 Hearing

The ALJ heard testimony from the plaintiff and VE Ronald Fleck.[176]

#### 3.2.2.1    The Plaintiff's Testimony

The plaintiff testified that her conditions had "declined more rapidly" since the last administrative hearing.[177] She described being "sensitive to just everything."[178] For example, she could not handle backrubs from her children because of her sensitivity to touch.[179] Her "pain level is horrible."[180] Sometimes she felt okay one minute, and then would be in pain the next minute.[181] She took Lyrica for her fibromyalgia but experienced side effects including insomnia and weight gain.[182] She has back problems and cannot sit or stand for very long.[183] As a result, her son and sister helped with household chores such as washing the dishes.[184] Her psychological conditions also had worsened.[185]

#### 3.2.2.2    VE's Testimony

The ALJ posed hypotheticals to the VE.

First, she asked the VE to assume an individual, of plaintiff's age and education, who was limited to "light work . . . occasional stoop, kneel, crouch and crawl[,] simple repetitive tasks[,]

---

[174] AR 1435.

[175] *Id.*

[176] AR 1392–1413.

[177] AR 1400.

[178] AR 1401.

[179] *Id.*

[180] AR 1402.

[181] *See id.*

[182] AR 1403

[183] AR 1404–05.

[184] AR 1405–06.

[185] AR 1402.

[and] occasional interaction with the public."[186] The VE said that such a person could work as a mail clerk, an ampoule filler, or a racker in a bakery.[187]

The ALJ added the following restrictions to the hypothetical: sedentary work; repetitive tasks not at a fast pace; few changes in the workday; simple work-related decisions; and occasional interactions with coworkers.[188] The VE responded that, with these limitations, the person could be an addresser, a loader, or a blancher.[189] Under either of the two previous hypotheticals, if the person were off-task 20% of the workday, then there would be no jobs available in the national economy.[190]

### 3.3    ALJ Findings

The ALJ followed the five-step sequential evaluation process to determine whether the plaintiff was disabled and concluded that she was not.[191]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since February 13, 2012.[192]

At step two, the ALJ found that the plaintiff had the following severe impairments: degenerative-disc disease, back osteoarthritis, fibromyalgia, bipolar disorder, PSTD, generalized anxiety disorder, and borderline-personality disorder.[193] She found the following impairments to be non-severe: headaches, insomnia, pelvic cyst, obesity, and polysubstance abuse.[194]

At step three, the ALJ concluded that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the

---

[186] AR 1407.

[187] AR 1407–08.

[188] AR 1408.

[189] AR 1408–09.

[190] AR 1409.

[191] AR 1352–79. Judges Corley and Alsup summarized the earlier ALJ decisions. *See* AR 513–15, 1498–99.

[192] AR 1358.

[193] *Id.*

[194] *Id.*

United States District Court
Northern District of California

regulations.[195] For the plaintiff's mental impairments, ALJ found moderate limitations in the following: (1) ability to understand, remember, or apply information; (2) ability to interact with others; and (3) concentration, persistence, or maintenance of pace.[196] The plaintiff's ability to adapt or manage oneself was mildly limited.[197]

Before reaching step four, the ALJ determined that the plaintiff had the RFC to "perform light work . . . except [that] she can occasionally stoop, kneel, crouch and crawl; [and] is limited to simple repetitive tasks with occasional public contact."[198]

At step four, the ALJ found that the plaintiff had no past relevant work.[199]

Finally, at step five, the ALJ held that the following jobs were available in the national economy for the plaintiff: (1) mail clerk; (2) ampoule clerk; and (3) bakery racker.[200] She also noted that, even with more restrictive limitations, there would still be other jobs available.[201]

The ALJ concluded that the plaintiff was not disabled.[202]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal citation and quotation marks omitted); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[195] AR 1359.

[196] AR 1360.

[197] AR 1361.

[198] *Id.*

[199] AR 1377.

[200] AR 1378.

[201] *Id.*

[202] AR 1378–79.

United States District Court
Northern District of California

1   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such

2   inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark*

3   *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record

4   supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision

5   and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).

6   "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless."

7   *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

8

9   ## GOVERNING LAW

10   A claimant is considered disabled if (1) he suffers from a "medically determinable physical or

11   mental impairment which can be expected to result in death or which has lasted or can be expected

12   to last for a continuous period of not less than twelve months," and (2) the "impairment or

13   impairments are of such severity that he is not only unable to do his previous work but cannot,

14   considering his age, education, and work experience, engage in any other kind of substantial

15   gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The

16   five-step analysis for determining whether a claimant is disabled within the meaning of the Social

17   Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

18

19   **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then
    the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working

20   in a substantially gainful activity, then the claimant's case cannot be resolved at step one,
    and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i).

21   **Step Two**. Is the claimant's impairment (or combination of impairments) severe? If not,

22   the claimant is not disabled. If so, the evaluation proceeds to step three. See 20 C.F.R. §
    404.1520(a)(4)(ii).

23   **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments

24   described in the regulations? If so, the claimant is disabled and is entitled to benefits. If
    the claimant's impairment does not meet or equal one of the impairments listed in the

25   regulations, then the case cannot be resolved at step three, and the evaluation proceeds to
    step four. See 20 C.F.R. § 404.1520(a)(4)(iii).

26

27   **Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or
    she has done in the past? If so, then the claimant is not disabled and is not entitled to

28   benefits. If the claimant cannot do any work he or she did in the past, then the case cannot

United States District Court
Northern District of California

be resolved at step four, and the case proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. See 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Human Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff argues that the ALJ erred by (1) misweighing the medical evidence, (2) finding the plaintiff's insomnia to be nonsevere at step two, (3) finding that plaintiff did not meet mental-impairment listings at step three, (4) discrediting plaintiff's testimony, (5) failing to consider third-party statements, and (6) basing step five on incomplete VE hypotheticals. The plaintiff also argues that the ALJ mischaracterized the evidence and repeated errors that Judges Corley and Alsup identified previously.[203]

### 1.   Whether the ALJ Erred in Weighing the Medical Evidence

The plaintiff argues, and the court agrees, that the ALJ erred in weighing the medical opinions.

The ALJ is responsible for "'resolving conflicts in medical testimony and for resolving ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews*, 53 F.3d at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing

---

[203] Pl. Mot. – ECF No. 24-1 at 18–37. The plaintiff also argues that the ALJ erred because her decision "substantially relies on bulk citation" to the medical evidence. *Id*. at 18.

1    court must consider the entire record as a whole and may not affirm simply by isolating a specific

2    quantum of supporting evidence.") (internal quotation marks and citation omitted).

3         "In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that

4    guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528

5    F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[204] Social Security regulations

6    distinguish between three types of physicians: (1) treating physicians; (2) examining physicians;

7    and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830

8    (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining

9    physician's, and an examining physician's opinion carries more weight than a reviewing [non-

10   examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing

11   *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

12        An ALJ may disregard the opinion of a treating physician, whether or not controverted.

13   *Andrews*, 53 F.3d at 1041. "To reject [the] uncontradicted opinion of a treating or examining

14   doctor, an ALJ must state clear and convincing reasons that are supported by substantial

15   evidence." *Ryan*, 528 F.3d at 1198 (alteration in original) (internal quotation marks and citation

16   omitted). By contrast, if the ALJ finds that the opinion of a treating physician is contradicted, a

17   reviewing court will require only that the ALJ provide "specific and legitimate reasons supported

18   by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)

19   (internal quotation marks and citation omitted); *see Garrison*, 759 F.3d at 1012 ("If a treating or

20   examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it

21   by providing specific and legitimate reasons that are supported by substantial evidence.") (internal

22   quotation marks and citation omitted). "The opinions of non-treating or non-examining physicians

23   may serve as substantial evidence when the opinions are consistent with independent clinical

24   findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

25

26

27

28   ---
     [204] The Social Security Administration promulgated new regulations, including a new § 404.1521,
     effective March 27, 2017. The previous version, effective to March 26, 2017, applies here.

An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for [his] conclusion." *Garrison*, 759 F.3d at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion . . . ." *Orn*, 495 F.3d at 631. (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

The ALJ also must consider the opinions of other "medical sources who are not acceptable medical sources and [the testimony] from nonmedical sources." 20 C.F.R. § 404.1527(f). The ALJ is required to consider observations by "other sources" as to how an impairment affects a claimant's ability to work. *Id.* Nonetheless, an "ALJ may discount [the] testimony" or an opinion "from these other sources if the ALJ gives . . . germane [reasons] for doing so." *Molina*, 674 F.3d at 1111 (internal quotations and citations omitted). "[A]n opinion from a medical source who is not an acceptable medical source. . . may outweigh the medical opinion of an acceptable medical source[.]" 20 C.F.R. § 404.1527(f)(1). "For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." *Id.*

The plaintiff contends that the ALJ misweighed the medical opinions from the following sources: (1) treating physician Robert Gardner; (2) treating physician's assistant Joseph Geare; (3) examining psychiatrist Daniel Mandelbaum; (4) examining psychologist Philip Cushman; (5) examining psychologist Molly Malone; (6) treating counselor Deborah Johnson, LCSW; (7) examining physician Sheila Benrazavi; and (8) examining psychologist Melody Samuelson.

### 1.1 Dr. Gardner

Dr. Gardner reported various work limitations based on plaintiff's fibromyalgia.[205] First, he found that the plaintiff met the American College of Rheumatology criteria for fibromyalgia and noted various symptoms that she experiences, including "chronic widespread pain" and over 20 tender points.[206] Second, he identified the following exertional limitations: (1) she could walk two city blocks without rest or severe pain; (2) she could sit and stand for 10 to 15 minutes at a time; (3) she could sit, stand, and walk for about two hours in a total eight-hour workday; (4) she could occasionally lift less than ten pounds, rarely crouch, squat, and climb stairs, and never twist, stoop, or climb ladders.[207] Finally, he said that the plaintiff would be off task 15% of the time, "incapable of even 'low stress' work," and would miss work more than four days a month.[208]

Because Dr. Gardner's findings are contradicted by Dr. Benrazavi's findings, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to discount his opinion. *See Garrison*, 759 F.3d at 1012.

The plaintiff argues that the ALJ erred by giving little weight to Dr. Gardner's findings of work limitations in part because (1) the ALJ mischaracterized the evidence about whether the plaintiff was in "acute distress" and did not explain why the lack of "joint erythema" and "synovitis" discounted Dr. Gardner's findings, and (2) the ALJ exaggerated plaintiff's daily activities.[209]

The ALJ's reliance on the lack of "acute distress," "joint erythema," and "synovitis" are not specific and legitimate reason for discrediting Dr. Gardner. First, as a basis for according Dr. Gardner's opinion little weight, the ALJ explained that the plaintiff "presented on numerous occasions from 2015 to 2018 in 'no acute distress,' with otherwise limited abnormal objective

---

[205] AR 384–87; *see also* AR 511 (Judge Corley's summarizing Dr. Gardner's findings).

[206] AR 384.

[207] AR 385–86.

[208] AR 387.

[209] Pl. Mot. – ECF No. 24-1 at 18–23, 26–27.

United States District Court
Northern District of California

exam findings."[210] But that is incorrect. On many occasions, the plaintiff presented with acute distress to P.A. Geare, and the record also documents her mental-health issues.[211] On at least one occasion, despite P.A. Geare's note of "no acute distress" in general appearance, the plaintiff cried through her appointment and expressed suicidal thoughts.[212] Moreover, the ALJ did not explain why "no acute distress" undermines the diagnosis. *Cf. Reinertson v. Barnhart*, 127 F. App'x 285, 290 n.2 (9th Cir. 2005) ("One who suffers from fibromyalgia, a condition marked by 'chronic pain through the body' . . . is not necessarily in 'acute distress.' Without more, that term does not constitute an objective medical finding that is inconsistent with severe fibromyalgia") (cleaned up); *Norman v. Berryhill*, No. 17-cv-04108-SI, 2018 WL 4519952, at *9 (N.D. Cal. Sept. 19, 2018) ("presenting as 'pleasant and cooperative'" in demeanor "is not inconsistent with allegations of depression").

Second, the ALJ gave Dr. Gardner's opinion little weight because the plaintiff denied "joint erythema," and Dr. Birnbaum found no "synovitis."[213] The ALJ did not explain, however, why this warranted giving little weight to Dr. Gardner's limitation findings. *Cf. Long v. Colvin*, No. 13-cv-05716-SI, 2015 WL 971198, at *6 (N.D. Cal. Mar. 3, 2015) ("the ALJ must not only identify the conflicting information, but [also must] provide her interpretation thereof, and explain why her interpretation, rather than the treating physician's, prevails"). The plaintiff's brief also suggest that these may indicate rheumatoid arthritis and not fibromyalgia.[214]

Similarly, the ALR erred by discrediting the opinion based on the plaintiff's daily activities.[215]

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Fair v. Bowen*, 885 F.2d 597, 603

---

[210] AR 1372.

[211] *See, e.g.,* AR 805, 814, 824, 833, 842, 845, 981, 1000, 1007, 1011, 1062, 1065, 1212, 1293, 1700, 1707, 1715, 1896, 1908, 1958, 1960.

[212] AR 2009–12.

[213] AR 1372.

[214] Pl. Mot. – ECF No. 24-1 at 20–21.

[215] AR 1372–73.

United States District Court
Northern District of California

(9th Cir. 1989) (citation omitted). The Ninth Circuit has held that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722.

First, the plaintiff's daily activities are not a basis for uniformly discrediting Dr. Gardner's opinion. Second, as Judge Corley said, "[i]t is improper to assume that [the] [p]laintiff would have no difficulties in a work setting simply because she performs household chores or find medication and counseling helpful."[216] Third, the ALJ did not specify how the plaintiff's daily activities contradicted Dr. Gardner's findings. The ALJ said that the plaintiff's caring of her children was inconsistent with a disabled person's abilities, but the record is uncontroverted that the plaintiff cannot care for them alone and needs help from her family.[217]

In sum, the court finds that the ALJ erred in according Dr. Gardner little weight.

### 1.2   P.A. Geare

The plaintiff contends that ALJ erred in giving little weight to treating P.A. Geare's opinion. The court agrees.

P.A. Geare is an "other source." *See Molina*, 674 F.3d at 1111. The ALJ thus must provide germane reasons for discounting his opinion. The ALJ has not done so.

First, to the extent the ALJ characterized P.A. Geare as consistently reporting that the plaintiff was not in "acute distress," this is incorrect and thus is an insufficient reason (as the court said in the last section).

Second, the ALJ accorded little weight to P.A. Geare's opinion, in part, because (1) the record generally showed conservative treatment and (2) he is not an acceptable medical source.[218] First, as the plaintiff contends, it is unclear what the ALJ determined to be "conservative" treatment, and the record does not reflect that more aggressive treatment options exist.[219] *Cf. Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) ("The record does not reflect that more aggressive

---

[216] AR 530.

[217] AR 1373.

[218] AR 1374–75.

[219] Pl. Mot. – ECF No. 24-1 at 23–24.

1    treatment options are appropriate or available. A claimant cannot be discredited for failing to

2    pursue non-conservative treatment options where none exists"). Second, P.A. Geare was a treating

3    source and saw the plaintiff once or twice a month for six years, and the ALJ's summary rejection

4    of his opinion based on a fact error and his position was not a germane reason to discount his

5    treatment-based opinion. *See Olmstead v. Colvin*, No. 15-cv-02656-NJV, 2016 WL 3611881, at *4

6    (N.D. Cal. July 6, 2016) (finding failure to provide germane reasons to discount nurse

7    practitioner's opinion to be "especially egregious where the nurse practitioner saw Plaintiff on

8    several occasions and her records make direct references to Plaintiff's limitations and ability to

9    work").

10   **1.3    Dr. Mandelbaum**

11       The plaintiff argues that the ALJ erred by giving "limited weight" to examining psychiatrist

12   Dr. Mandelbaum's assessment because (1) the ALJ repeated errors identified by Judges Corley

13   and Alsup, (2) Judge Corley already found that Dr. Mandelbaum's opinion was supported by the

14   medical record, and (3) the ALJ relied on erroneous "no acute distress" findings.[220] Because Dr.

15   Mandelbaum's limitations findings are contradicted by Dr. Samuelson's findings, the ALJ must

16   provide specific and legitimate reasons supported by substantial evidence to discount his opinion.

17   *See Garrison*, 759 F.3d at 1012. The ALJ did not.

18       To the extent that the ALJ accorded only "limited" weight due to (1) Dr. Mandelbaum's failure

19   to express his opinion "in terms of vocational functioning" and (2) his review of only the 2011

20   record, Judges Corley and Alsup already rejected those assessments, and the court agrees with

21   their reasonings.[221] Judge Corley found that "numerous medical records and opinions support Dr.

22   Mandelbaum's findings."[222] The court affirms that assessment. Indeed, Dr. Mandelbaum's

23   findings of work impairments — including moderate–to marked impairments in the plaintiff's

24   ability to understand, remember, and carry out simple instructions and ability to interact

25

26   [220] *Id.* at 27–28.

27   [221] AR 526–27, 1501.

     [222] AR 528.

28

United States District Court
Northern District of California

appropriately with the public and co-workers[223] — were echoed by other examining and treating sources such as Dr. Malone and LCSW Johnson.[224] And finally, the ALJ's discrediting the opinion based on "no acute distress" fails for the reasons stated above.

In sum, the ALJ thus failed to properly weigh Dr. Mandelbaum's opinion.

### 1.4   Dr. Cushman

The ALJ accorded little weight to Dr. Cushman's findings that plaintiff would have difficulties with regular attendance, completing a normal workday or work week, and working with supervisors, co-workers and the general public.[225] The ALJ assigned little weight because (1) Dr. Cushman did not have the benefit of later records, (2) his findings are not consistent with later records of normal examinations and lack of acute distress, (3) his findings contradict the plaintiff's activities of daily living showing that the plaintiff can clean, shop, and care for her young children, and (4) his conclusions are inconsistent with the Global Assessment of Functioning  ("GAF") score of 60.[226] Because Dr. Cushman's limitations findings are contradicted by Dr. Samuelson, the ALJ must provide specific and legitimate reasons supported by substantial evidence to discount his opinion. *See Garrison*, 759 F.3d at 1012. The ALJ erred in weighing Dr. Cushman's opinion.

As Judge Corley explained, Dr. Cushman's limited review of the record on its own is not a sufficient reason to discount his opinion.[227] As discussed above, the ALJ's finding of "no acute distress" and his characterization of the plaintiff's daily activities, are not specific and legitimate reasons. Moreover, other medical opinions support Dr. Cushman's findings. For example,

---

[223] AR 224.

[224] *See, e.g.,* AR 1798 (Dr. Malone's finding moderate to significant impairments in ability to interact with coworkers and the public); AR 2002 (Ms. Johnson's finding marked limitation in abilities to (1) understand, remember, and apply information, and (2) interact with others).

[225] AR 253, 1369.

[226] AR 1369. A GAF score purports to rate a subject's mental state and symptoms; the higher the rating, the better the subject's coping and functioning skills. *See Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014). A person with a GAF score of 51 to 60 may connote "moderate symptoms" (e.g. a flat and circumstantial speech and occasional panic attacks) or moderate difficulty in social, occupational, or school and chores-related functioning (e.g. few friends and conflicts with peers or co-workers). *See id.*

[227] AR 530.

1    Dr. Malone found that the plaintiff's abilities to maintain regular work attendance and interact

2    with coworkers and the public were moderately to significantly impaired.[228] Finally, the ALJ erred

3    by concluding, without explanation, that Dr. Cushman's assessment of a GAF score of 60, which

4    reflects moderate symptoms or moderate functional difficulties, is "inconsistent with [his finding

5    of plaintiff's] inability to attend work regularly."[229]

6       In sum, the ALJ erred in weighing Dr. Cushman's opinion.

7    **1.5   Ms. Johnson**

8       Ms. Johnson is a social worker who provided psychotherapy treatment to the plaintiff. She is

9    an "other source." The ALJ thus must provide germane reasons for rejecting her opinion. *See*

10    *Molina*, 674 F.3d at 1111. The ALJ accorded little weight to Ms. Johnson's July 2016 assessment

11    and partial weight to her October 2018 assessment, in part, because that (1) there are no treatment

12    records from Ms. Johnson to support her opinion; and (2) the longitudinal record does not support

13    her findings.[230] These reasons are not germane.

14       First, the record contains two years of Ms. Johnson's treatment notes documenting the

15    plaintiff's struggles with bipolar disorder, depression, and insufficient eating or sleeping.[231]

16    Second, the court already rejected as insufficient the ALJ's findings of no acute distress and

17    conservative treatment.

18    **1.6   Dr. Malone**

19       The ALJ also erred by giving little weight to examining psychologist Dr. Malone's opinion.[232]

20       The ALJ gave little weight to Dr. Malone's opinion for the following reasons: (1) her findings

21    of work restrictions internally "conflict with [her] exam findings showing normal appearance,

22    speech, orientation, intelligence, fund of knowledge, judgment, thought process and content;" (2)

23

24    ——————————————

25    [228] AR 1798.

      [229] AR 1370.

26    [230] AR 1373–74.

27    [231]AR 237–75.

28    [232] The plaintiff refers to Dr. Malone as Dr. Malloy. Pl. Mot. – ECF No. 24-1 at 28–29.

United States District Court
Northern District of California

the plaintiff's record showed conservative treatment with no "psychiatric hospitalizations or 5150 placements;" (3) the plaintiff did not have acute distress; and (4) the limitations findings were inconsistent with the plaintiff's ability to care for her young children.[233] Because Dr. Malone's findings are contradicted by Dr. Samuelson's findings, the ALJ must provide specific and legitimate reasons supported by substantial evidence to discount her opinion. *Garrison*, 759 F.3d at 1012. The ALJ did not do so.

First, the ALJ does not explain how the plaintiff's normal appearance, thought process, or judgment during the examination translates to no work impairments, thus rendering Dr. Malone's opinion internally inconsistent. Indeed, Dr. Malone observed that the plaintiff's attention was "limited," her concentration, calculation, and memory were "poor," and her mood was "anxious."[234] *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("the ALJ improperly cherry-picked some of [examining physician's] characterizations of [the plaintiff's] rapport and demeanor instead of considering these factors in the context of [the physician's] diagnoses and observations of impairment."). Next, the ALJ's characterization of "conservative treatment" and a lack of psychiatric hospitalization is similarly unavailing, both for the reasons set forth above and because it is not apparent, and the ALJ did not explain, why a lack of "5150 placements" necessarily contradicted work impairments found by Dr. Malone. Finally, the remaining reasons are not specific and legitimate as discussed above.

### 1.7   Dr. Benrazavi

The ALJ also erred by according "great weight" to examining physician Dr. Benrazavi's opinion that the plaintiff (essentially) had no physical limitations that would prevent her from working.

Citing the record about mild degenerative-disc disease, the ALJ found that Dr. Benrazavi's findings of the plaintiff's physical limitations were supported by the longitudinal treatment.[235] But

---

[233] AR 1370–71.

[234] AR 1797.

[235] AR 1371.

1  as Judges Alsup and Corley explained, the ALJ must do more than merely identify the evidence

2  and instead must provide her interpretation of the evidence.[236] Here, the ALJ never explained how

3  mild disc degeneration supports Dr. Benrazavi's limitations, and she did not address the

4  contradicting findings of treating physician Dr. Gardner and treating P.A. Geare. Also, to the

5  extent the ALJ based her reasoning on the lack of "acute distress," it is not a specific and

6  legitimate reason, as discussed above. Moreover, the ALJ did not consider other factors such as

7  the examining relationship, the nature of the examining relationship, or the length or frequency of

8  the examination, especially given the plaintiff's long histories with treating sources. *See* 20 C.F.R.

9  § 404.1527(c).

10  In sum, the ALJ erred in weighing Dr. Benrazavi's opinion.

11  **1.8   Dr. Samuelson**

12  Finally, the ALJ erred by according "significant" weight to examining psychologist Dr.

13  Samuelson's opinion that the plaintiff's mental-health issues did not preclude her from working.

14  The ALJ assigned great weight to Dr. Samuelson's mild-to-none mental limitations because

15  (1) Dr. Samuelson "had the opportunity to conduct a comprehensive examination and interview of

16  the claimant," and (2) her findings are consistent with the record.[237] The plaintiff contends that this

17  was an error because the ALJ failed to consider the examining relationship, the length and nature

18  of the relationship, and other factors under 20 C.F.R. § 404.1527(c).

19  First, the ALJ's finding that Dr. Samuelson must be significantly credited because she

20  conducted a "comprehensive examination" is conclusory. The ALJ did not explain how this one-

21  time mental examination was "comprehensive." Indeed, by Dr. Samuelson's account, she said that

22  her findings were "gathered during this one time-limited mental status evaluation[;] [and] [s]hould

23  there be discrepancies . . . [,] it is recommended that the claimant's psychiatric diagnosis and

24  symptom severity be verified through examination of medical records from past or recent

[236] AR 523, 1501.

[237] AR 1370.

1   treatment providers."[238] Second, Dr. Samuelson's opinion did not discuss other mental-health

2   issues present in the plaintiff's medical records.[239] Third, Dr. Samuelson's opinion is inconsistent

3   with express findings of work-preclusive limitations in the longitudinal record, such as the

4   opinions of treating sources (P.A. Geare and LCSW Johnson) and the opinions of the examining

5   sources (psychiatrist Dr. Mandelbaum, and psychologists, Drs. Cushman and Malone).

6                                      *       *       *

7   In sum, the ALJ erred by mis-weighing the medical evidence.

8

9   **2.   Whether the ALJ Erred by Discounting the Plaintiff's Testimony**

10   The plaintiff contends that the ALJ erred by discounting her testimony because the ALJ

11   mischaracterized the medical evidence and the record regarding her improvement while on

12   medication.

13   In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d

14   at 1112 (9th Cir. 2012). "First, the ALJ must determine whether [the claimant has presented]

15   'objective medical evidence of an underlying impairment which could reasonably be expected to

16   produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez*, 572 F.3d at 591). Second, if

17   the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must

18   provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding

19   the severity of the claimant's symptoms. *Id.* (internal quotation marks and citations omitted).

20   "At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or

21   else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. §

22   423(d)(5)(A).'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an

23   ALJ may consider in weighing a claimant's credibility include reputation for truthfulness,

24   inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained,

25   or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."

26

27   ─────────────────────
[238] AR 1021.

28   [239] AR 1022 (reviewing only one psychiatric record dated December 9, 2014 by P.A. Geare).

United States District Court
Northern District of California

*Orn*, 495 F.3d at 636 (internal quotation marks omitted). "The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see, e.g.*, *Morris v. Colvin*, No. 16-CV-0674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

In rejecting the plaintiff's testimony, the ALJ held that "the longitudinal record and medical findings and notes fail to corroborate the level of dysfunction alleged by the claimant."[240] The court has held that this reasoning was error. The ALJ's rejection of the plaintiff's testimony was thus error too. As the plaintiff recounts, the treatment records establish that "gabapentin and Lyrica" did not help her fibromyalgia.[241] The medical record also shows her mental-health diagnoses and physical limitations. As discussed above, the ALJ did not address these issues.

### 3.   Whether the ALJ Erred at Step Two

The ALJ also erred at step two by mischaracterizing the evidence to conclude that the plaintiff's insomnia was non-severe.

At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen*, 80 F.3d at 1290. The ALJ must consider the record as a whole, including evidence that both supports and detracts from its final decision. *Reddick*, 157 F.3d at 720. An impairment is not severe if it does not significantly limit the claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1522. "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Smolen*, 80 F.3d at 1290 (cleaned up); *see also Monteith v. Comm'n of Soc. Sec.*, No. 18-cv-04481-DMR, 2020 WL 789823, at *2 (N.D. Cal. Feb. 17, 2020).

"[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137 at 153–54 (1987)). Thus, "[a]n

---

[240] AR 1362.

[241] AR 1910; *see also* Pl. Mot. – ECF No. 24-1 at 34–36.

United States District Court
Northern District of California

impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual['s] ability to work." *Id*. (internal quotation marks omitted) (citing SSR 85–28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988)).

Here, the ALJ found that the plaintiff's insomnia was not severe because "there is no ongoing testing or treatment for these conditions."[242] This conclusion is incorrect. The record establishes that her ongoing treatment for insomnia includes prescriptions for Valium, Restoril, Seroquel, and Temazepam.[243]

### 4.   Whether the ALJ Erred at Step Three

The plaintiff contends that the ALJ improperly weighed the medical evidence in concluding that her mental impairments did not meet any listings.[244]

At step three of the five-step framework, "[i]f a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled." *Lewis v. Apfel*, 236 F.3d 503, 512 (citing 20 C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id*. (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). "Medical equivalence will be found 'if the medical findings are at least equal in severity and duration to the listed findings.'" *Marcia*, 900 F.2d at 175–76 (quoting 20 C.F.R. § 404.1526). Accordingly, at step three, "the ALJ must explain adequately his evaluation of the alternative tests and the combined effects of the impairments" to determine whether a claimant equals a Listing. *Id*. at 176.

---

[242] AR 1358.

[243] *See, e.g.,* AR 320, 327, 364, 1703, 2015.

[244] Pl. Mot. – ECF No. 24-1 at 24–25.

1     As discussed above, the ALJ misweighed the medical opinions. That affects the step-three

2     determination. The ALJ thus erred here too.

3

4     **5.   Whether the ALJ Erred by Discounting Third-Party Statements**

5     The plaintiff argues that the ALJ erred because she did not mention the plaintiff's former

6     husband's statement and did not weigh the statements of the plaintiff's fiancé, mother, and

7     sister.[245]

8     The ALJ must also consider "other source" testimony and evidence from a layperson. *Ghanim*,

9     763 F.3d at 1161; *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)

10    ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony

11    concerning a claimant's ability to work") (cleaned up). "Descriptions by friends and family

12    members in a position to observe a claimant's symptoms and daily activities have routinely been

13    treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). It is

14    competent evidence and "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d

15    1462, 1467 (9th Cir. 1996). The Ninth Circuit has not "required the ALJ to discuss every witness's

16    testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. An ALJ may

17    "point to" reasons already stated with respect to the testimony of one witness to reject similar

18    testimony by a second witness. *Id*.

19    Here, the ALJ did identify the statements.[246] To the extent that the court already rejected the

20    ALJ's failure to consider these statements in holding that the plaintiff's daily activities in caring

21    for her children are inconsistent with a disabled person, that analysis applies here too.

22

23

24

25

26

27    [245] *Id*. at 36.

28    [246] AR 1376–77.

*United States District Court*
*Northern District of California*

### 6.   Whether the ALJ erred at Step Five

Finally, the plaintiff argues that the ALJ erred at step five because the hypotheticals were based on an erroneous RFC. Because the ALJ erred in weighing the medical opinions, and the RFC is predicated on those opinions, the ALJ erred here too.

### 7.   Remand for Determination of Benefits

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).

In deciding whether to remand a social-security case for further proceedings or for an immediate award of benefits, the Ninth Circuit has promulgated the "credit-as-true" rule. *See Garrison*, 759 F.3d at 1019–23; *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1100–02 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *see also Connett*, 340 F.3d 871, 876 (9th Cir. 2003); *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989). The credit-as-true rule applies to both "medical opinion evidence" and to "claimant testimony." *Garrison*, 759 F.3d at 1020. Under the credit-as-true rule, a reviewing court may credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if: (1) the ALJ failed to provide "legally sufficient reasons" for rejecting the evidence; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citing *Ryan*, 528 F.3d at 1202; *Lingenfelter*, 504 F.3d at 1041; *Orn*, 495 F.3d at 640; *Benecke*, 379 F.3d at 595; *Smolen*, 80 F.3d at 1292). If these three conditions are met, the court may remand for an award of benefits unless "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021; *see also McCartey*, 298 F.3d at 1076 (noting court's "discretion").

1    Generally, "'[i]f additional proceedings can remedy defects in the original administrative

2    proceeding, a social security case should be remanded.'" *Garrison*, 759 F.3d at 1019 (quoting

3    *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)) (alteration in original); *Treichler*, 775 F.3d

4    at 1099, 1106 ("a reviewing court is not required to credit claimants' allegations regarding the

5    extent of their impairments as true merely because the ALJ made a legal error in discrediting their

6    testimony;" if "the reviewing court simply cannot evaluate the challenged agency action on the

7    basis of the record before it, the proper course, except in rare circumstances, is to remand to the

8    agency for additional investigation or explanation.") (citations omitted); *see also Dominguez v.*

9    *Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further

10   administrative proceedings would serve no useful purpose, it may not remand with a direction to

11   provide benefits."); *McCartey*, 298 F.3d at 1076 (remand for award of benefits is discretionary);

12   *McAllister*, 888 F.2d at 603 (remand for award of benefits is discretionary); *Connett*, 340 F.3d at

13   876 (finding that a reviewing court has "some flexibility" in deciding whether to remand).

14       Here, the court finds the three conditions are satisfied and remands with an instruction for an

15   award for benefits.

16       First, as discussed above, the ALJ mischaracterized medical records and opinions.

17       Second, there are "no outstanding issues that must be resolved before a determination of

18   disability can be made." *Garrison*, 759 F.3d at 1019–20, n.26; *see also Treichler*, 775 F.3d at

19   1108, 1110 (Tashima J., dissenting) (noting the limited situations where the Ninth Circuit has

20   determined that there were outstanding issues to be considered or resolved by the ALJ warranting

21   a remand without instructions to award benefits). The plaintiff's application for benefits has been

22   pending for almost a decade, and multiple treating and examining sources have identified the

23   plaintiff's mental and physical limitations, as noted above.

24       Third, it is clear from the record that the ALJ would be required to find the plaintiff disabled if

25   the improperly discredited evidence is credited as true. The court thus remands for the calculation

26   and award of benefits.

27

28

United States District Court
Northern District of California

1

**CONCLUSION**

2   The court grants the plaintiff's motion for summary judgment, denies the Commissioner's

3 cross-motion for summary judgment, and remands the case for the calculation and award of

4 benefits.

5

6   **IT IS SO ORDERED.**

7   Dated: July 20, 2020



8                         _____

9                         LAUREL BEELER
                         United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California